HARRIET S. RUMSEY et al., Appellants, *v.* THE NEW YORK
AND NEW ENGLAND RAILROAD COMPANY, Respondent.

Where a railroad company without having acquired the rights of the
owner of land bounded on a navigable river has constructed its road
along the water front, and so cut off the owner from access to the
navigable part of the river, he is entitled to recover the diminished
rental value of his land caused by the obstruction.

In an action to recover damages the owner is not restricted to proof of the
rental value of the land as actually used, at the time of the obstruction;
but may show by competent evidence the fair rental value, if access to
the river had not been obstructed.

In such an action it appeared that plaintiffs' premises had formerly been
used as a brickyard and the river front for shipping brick, etc., but
that some years before the construction of defendant's road, such use
had been abandoned, the dock and causeway to it had become decayed
and there were no structures or machinery upon the land for brick-
making.   Plaintiff offered to show that the land was in condition to
lease as a brickyard, except for the obstruction; that it was the custom,
when land was leased for that purpose, for the lessee to furnish the
improvements necessary to conduct the business; that prior to the com-
mencement of the action there were persons ready and willing to take a
lease of the land as it then was, provided access could be had from the
land to the river front, and that plaintiffs asked defendant to allow the
lessee to obtain this access which it refused.   This was objected to and
excluded.   *Held*, error.

*Rumsey* v. *N. Y. & N. E. R. R. Co.* (133 N. Y. 79), distinguished.

(Argued December 15, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made September 12, 1892, which affirmed a judgment in
favor of plaintiffs entered upon a verdict.

This action was brought to recover damages for obstructing
plaintiffs' means of access from their land to the Hudson river.

Plaintiffs owned property fronting on the Hudson river,
which for several years had been used as a brickyard, and a
dock and causeway built therefrom had been used for ship-
ping brick, but since 1875 such use of the premises had been
abandoned, the dock and causeway had been allowed to decay,
and there had been no buildings or machinery on the premises

to fit them for use in manufacturing brick. Plaintiffs also had title to the lands under water in front of their premises. In 1880 and 1881 defendant constructed its road along the river in front of plaintiffs' land without any right or authority from them or their grantors and thus cut off their access to the river.

The facts material to the questions discussed are stated in the opinion.

*Milton A. Fowler* for appellants. The court below erred in refusing to allow the witness Aldridge to answer the question : " What, in your judgment, was the fair rental value of that property from the 1st of January, 1882, to the 1st of January, 1888, without the New York and New England railroad there ; what was the fair market rental value of this property as it was between those years ? " (133 N. Y. 83, 84 ; 45 N. Y. S. R. 36.)

*W. C. Anthony* for respondent.

PECKHAM, J. This case has been here once before, and is reported in 133 N. Y. 79. The court upon that appeal reversed the judgment in favor of the plaintiff and granted a new trial and this appeal is from a verdict in favor of the plaintiff taken upon that new trial, under the direction of the court, for six cents damages.

It was assumed upon this last trial that the rule of damages as laid down by this court on the former appeal led necessarily to the result directed by the court.

In this view we think there was error.

The rule as laid down by us did not preclude the plaintiffs from showing by competent evidence what would have been the fair rental value of the property, if access to it had not been obstructed by defendant's railroad.

On the former appeal we held that the plaintiffs could not recover what were speculative damages caused as they alleged by the defendant in obstructing the plaintiffs' use of the prem-

ises for brickmaking purposes, when it appeared that plaintiffs had abandoned that use of the land years before the defendant created the obstruction in question, and the premises had not since been in a condition to be so used even if the obstruction were not there. It was said that the basis for an estimate of the damage must be found by reference to the land as it was used during the time embraced in the action. The facts showed that it was assumed the land could not have been used for a brickyard during this time, because of plaintiffs' long abandonment of such use and the decay of the dock at the westerly end of the culvert and also the decay of a part of the causeway and the absence of buildings and machinery fit for brickmaking purposes. In such case the possible use of the land for a brickyard was regarded as dependent upon outlays not made or so far as shown not contemplated by plaintiffs, and hence, within the principles of the *Tallman* case (121 N. Y. 119), that use was not to be taken into consideration.

It was not meant to restrict the recovery to the rental value of the land as actually used and for that purpose only, but any competent evidence going to show the actual rental value of the land as it was, that is, in the same general condition, would be proper although not restricted to such rental for the use to which it in truth was put during that time. Otherwise, if the land had not been in actual use, then no damage would be recoverable, although the value of the use of the land in exactly the condition it was in, might be proved to have been a very large annual sum, if the obstruction were absent. What we intended to hold was the same principle which had been announced in the *Tallman* case (*supra*), and thereby to prevent speculation as to what alterations a party might have made in the condition of the land, by which he might have secured large returns by way of rent for such possible use, while in fact doing nothing towards incurring expenses in making such alterations or in attempting to realize such wholly imaginary profits.

And this was the extent of our holding when the facts of the case are considered and the language of the court is applied thereto.

The case is now before us in a totally different aspect. The plaintiffs offered to show substantially that the land was in condition to lease for a brickyard during all this time, excepting for the existence of this obstruction wrongfully placed by the defendant, which precluded access to and from the river, and that it was the custom for the lessee to furnish the improvements upon the property necessary to conduct the brickmaking business. The plaintiffs also offered to show there were persons ready and willing to take a lease of the land just as it stood and in the exact condition it remained in during the time prior to the commencement of the action, provided access could be had from the land to the river front, and that plaintiffs sought defendant's permission to allow the lessee to obtain this access to the river, and that it was refused. It seems to us this evidence was proper. The land was ready for use as a brickyard, tenants were ready to lease it for that purpose, provided access could be obtained to the river, and this access was wrongfully obstructed by the defendant, and it refused to remove it or permit such access to be had. Why should such evidence not be allowed? And if it appeared that the rental value of the land for such a purpose was in excess of that which could be obtained for its use for other purposes we think, within all equitable rules, the defendant should pay that difference which was caused directly by its own wrongful act. This is not speculation any more than everything can be called speculation, regarding what has not in truth taken place. The tenant did not, in fact, take the lease, but he was ready to, as the proof showed if only this wrongful obstruction were removed, and the obstruction was the illegal act of the defendant. Thus the failure to take the lease was the direct and immediate result of that act which was wrongful on the part of the defendant, and which it ought to be held responsible for. A *bona fide* offer to take a lease for a certain sum if the obstruction could be removed, while not at all conclusive upon the question of rental value would be competent evidence upon the subject.

The rule as enforced by the trial court is as it seems to

us exceedingly unjust. Although the land may have been entirely fit to be used for a brickyard but for this one difficulty, and though its use for that purpose might be very valuable, yet because of the obstruction, although wrongfully placed there by defendant, it cannot be so used, and the value of the land for the use it was actually put to may not have been in the slightest degree diminished by this obstruction, therefore according to the rule laid down by the trial court, the plaintiffs would have proved no damage, and hence would be dismissed with the nominal verdict of six cents. This cannot be the law and we are confident no principle has been laid down by this court which leads to such great hardship and injustice.

The trial court we think fell into error in this application of the rule of damages, and the judgment should for that reason be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.